JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EMSURGCARE et al.,

     Plaintiffs,

v.

UNITEDHEALTHCARE
INSURANCE COMPANY,

     Defendant.

Case No. 2:24-cv-03654-SB-E

ORDER GRANTING MOTION TO
REMAND [DKT. NO. 15]

     In June 2020, Plaintiffs Emsurgcare and Emergency Surgical Assistant
(ESA) provided emergency medical care to a patient insured by Defendant
UnitedHealthcare Insurance Company (UIC).  Emsurgcare and ESA billed UIC
$60,000 and $59,000, respectively, for the services provided, but Defendant paid
less than $1,700 on Emsurgcare's claim and nothing on ESA's.  Plaintiffs, together
with the patient, filed a lawsuit in state court alleging violation of the Employee
Retirement Income Security Act of 1974 (ERISA) and quantum meruit.  After the
suit was removed, this Court dismissed Plaintiffs' amended pleading with leave to
amend and ordered the parties to show cause why they should not be sanctioned
for violating the Court's orders.  Instead of amending, Plaintiffs voluntarily
dismissed that case and then filed this action in state court, alleging only their
state-law quantum meruit claim and including language suggesting that they
sought damages under $75,000.  UIC removed, invoking both diversity jurisdiction
and federal-question jurisdiction based on ERISA preemption.  Plaintiffs now
move to remand, and UIC moves to dismiss Plaintiffs' complaint on the merits.
Dkt. Nos. 13, 15.  The Court held a hearing on the motion on June 7, 2024.
Because UIC has not met its burden to show that this Court has jurisdiction, the
case is remanded.

1

# I.

In the prior related case, Plaintiffs, along with the insured patient, filed a complaint in state court against the insured's employer, alleging claims for failure to pay ERISA plan benefits and for quantum meruit. *Raymond Johnson et al. v. The Trade Desk, Inc. et al.* (*Emsurgcare I*), No. 2:23-cv-01537-SB-E, Dkt. No. 1-1. The complaint alleged that Plaintiffs had provided emergency medical services to the insured on June 22 and July 21, 2020, at Marina del Rey Hospital, had submitted "a total bill for over $149,000.00" to the insurer, and had received only $1,674.57 on the claim. *Id.* ¶¶ 27, 29–30. After the employer removed, Plaintiffs filed an amended complaint bringing the same two claims against United Healthcare Services, Inc. (UHS) rather than the employer. *Emsurgcare I*, Dkt. No. 11. After UHS moved to dismiss the amended complaint, it became apparent that Plaintiffs still had not named the correct defendant, which was UIC, the insurer. The Court therefore dismissed the amended complaint and gave Plaintiffs leave to amend yet again. *Emsurgcare I*, Dkt. No. 32. In its order, the Court described at length its "serious concerns about the parties' failure to meet and confer adequately to resolve unnecessary disputes" and ordered the parties to show cause why they should not be sanctioned for their failure to comply with the Court's meet-and-confer requirement. *Id.* at 2–5. Instead of amending, Plaintiffs voluntarily dismissed their claims without prejudice, and the Court discharged its order to show cause. *Emsurgcare I*, Dkt. Nos. 33, 35.

Almost a year later, Plaintiffs—this time without the insured—filed the present case against UIC in state court, alleging a single claim for quantum meruit. Dkt. No. 1-1. The complaint states that Plaintiffs provided emergency medical services to a patient on June 22, 2020, at Marina del Rey Hospital; that they submitted bills for $60,000 and $59,000 to UIC; and that UIC paid only $1,674.57 on Emsurgcare's claim and nothing on UIC's claim. *Id.* ¶¶ 26, 29–30.[1] The complaint also alleges that Plaintiffs' billed charges "are usual, reasonable, and customary," that Plaintiffs charged UIC the same fees they charge all other payors, and that their fees are comparable to the prevailing provider rates in comparable areas. *Id.* ¶ 22. Plaintiffs allege that UIC "owes [Plaintiffs] the total UCR [i.e., the usual, customary, and reasonable] value of [Plaintiffs'] services" and seek

---

[1] Although the complaint in *Emsurgcare I* also alleged treatment on July 21, 2020, and alleged a slightly higher total claim amount (presumably because of the additional treatment), it is undisputed that the two cases address the same claims for treatment of the same patient at the same hospital on the same date. Moreover, the same counsel as in *Emsurgcare I* represent the parties on both sides.

compensatory damages, restitution, and statutory interest. *Id*. ¶ 39 & prayer. The cover page of the complaint, however, includes a line stating, "Total Damages – Under $75,000." *Id*. at 3 of 12.

UIC removed the case, asserting that the Court has diversity jurisdiction and federal-question jurisdiction, the latter based on complete preemption under ERISA. Dkt. No. 1. UIC then moved to dismiss the complaint for failure to state a claim, arguing that the Knox–Keene Act on which Plaintiffs' claim is predicated does not apply, the quantum meruit claim is expressly preempted by ERISA, and the complaint does not state a cognizable quantum meruit claim. Dkt. No. 13. The same day, Plaintiffs moved to remand. Dkt. No. 15.

## II.

A defendant may remove a civil action from state to federal court so long as jurisdiction originally would lie in federal court. 28 U.S.C. § 1441(a). If removal is based on diversity jurisdiction, *id*. § 1441(b), the removing defendant must prove complete diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). If removal is based on federal-question jurisdiction, the defendant must show that "a federal question is presented on the face of the plaintiff's properly pleaded complaint," although a claim that purports to rely on state law may arise under federal law where Congress has completely preempted the relevant area of the law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987). The removing party bears the burden of proof, and there is a "strong presumption" against removal jurisdiction, which requires remand "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

## III.

## A.

It is undisputed that complete diversity exists; Plaintiffs are citizens of California, while UIC is a Connecticut citizen. The parties hotly contest whether the amount in controversy requirement is satisfied. Plaintiffs contend that the inquiry starts and ends with the words "Total Damages – Under $75,000.00" on the cover page of the complaint. UIC, on the other hand, relies on the factual allegations in the complaint to argue that Plaintiffs in fact are asserting entitlement to well over $100,000.

UIC is correct that Plaintiffs' bald assertion on the cover page of the complaint does not establish that the amount in controversy is below $75,000 where the allegations themselves seek more than $75,000. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007) (affirming denial of remand where complaint alleged that "[t]he damages to each Plaintiff are less than $75,000" but prayer for relief sought unquantified damages that would exceed $75,000 for each plaintiff if the plaintiffs prevailed). As UIC correctly argues, the allegations in Plaintiffs' complaint assert entitlement to more than $75,000. The complaint alleges that Plaintiffs billed UIC a total of $119,000 and received only $1,674.57, leaving more than $117,000 unpaid. Dkt. No. 1-1 ¶¶ 29–30. Plaintiffs assert that UIC owes them "the total UCR value" of their services and that "[t]he quantum meruit or total UCR value of [Plaintiffs'] services is determined according to what providers in the area usually charge for the same or similar medical services in the absence of preferred providers or participating providers contractual rates" and "can also be determined based on the amounts [Plaintiffs] have been paid for the same or similar service." *Id*. ¶¶ 39–40. Finally, Plaintiffs allege that their charges "are usual, reasonable, and customary," that they "charged [UIC] the same fees that [they] charge[] all other payors," and that their fees "are comparable to the prevailing providers rates for other surgeons in comparable geographic areas." *Id*. ¶ 22. Taken together, these allegations assert that Plaintiffs charged UCR rates. If the $119,000 billed by Plaintiffs is the UCR value of their services, then the allegation that UIC owes Plaintiffs "the total UCR value" of their services is necessarily an allegation that UIC owes Plaintiffs more than $117,000.

This does not end the Court's inquiry, however, because UIC's argument depends on aggregating the claims of Plaintiffs—it is undisputed that neither Plaintiff independently seeks more than $75,000. Because neither side addressed this issue in the original briefing on the motion to remand, the Court ordered supplemental briefing, Dkt. No. 23, which the parties timely filed, Dkt. Nos. 24, 25.

As UIC acknowledges, "[t]he traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (citing *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911)). Thus, "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount." *Troy Bank*, 222 U.S. at 40. However, plaintiffs' claims can be aggregated when they "unite to enforce a single title or right in which they have a common and

4

undivided interest." *Id.*; *accord Snyder v. Harris*, 394 U.S. 332, 335 (1969));
*Urbino*, 726 F.3d at 1122.  Courts determine the character of the plaintiffs' interest
by looking to "the source of plaintiffs' claims.  If the claims are derived from
rights that they hold in group status, then the claims are common and undivided.  If
not, the claims are separate and distinct." *Urbino*, 726 F.3d at 1122 (quoting *Eagle
v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985)).

UIC concedes that "[t]he distinction between 'separate and distinct claims'
and 'common and undivided claims' 'is not clear.'"  Dkt. No. 24 at 2 (quoting
*Eagle*, 769 F.2d at 546).  But UIC argues that Plaintiffs' claims should be
aggregated for three reasons.  First, they argue that the amounts sought are
interconnected because ESA's assistant surgeon claim depends on the amounts
sought by Emsurgcare for the primary surgeon.  *See* Dkt. No. 1-1 ¶ 30 n.4 (alleging
that "[i]nsurers commonly reduce the assistant surgeon's bill to 25% of the
primary").  Second, UIC argues that the allegations in the complaint conflate
Plaintiffs, who are described collectively as "Medical Providers," and assert a
single damages demand.  Third, UIC asserts that the same individual, Dr.
Feizbakhsh, is the CEO, secretary, and CFO of both Plaintiffs.

These arguments do not meet UIC's heavy burden to show that removal is
proper based on diversity jurisdiction.  To be sure, Plaintiffs' claims are closely
related; they both involve payment for the same surgery on the same patient.  But it
does not follow that Plaintiffs hold their rights "in group status" or that they have a
common interest in each other's claims.  UIC's own evidence shows that Plaintiffs
filed separate claims for payments and separate administrative appeals seeking full
payment of their bills.  Dkt. No. 17-2 at 212, 218 of 236.  Each Plaintiff provided
medical treatment to the patient and sought compensation for its services, and
neither Plaintiff asserts entitlement to payment for the other's services.  The fact
that Plaintiffs are closely related does not change the source of their rights; their
claims would be no different as a legal matter if they were completely independent.
And while it may be true that, as Plaintiffs allege, insurers sometimes reduce
payments on assistant surgeon bills to a percentage of the primary surgeon's
payment, UIC has not shown that either Plaintiff's legal right to payment depends
on the other's.  *Cf. Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)
(rejecting aggregation where "[r]ecovery by one plaintiff in this case would not, as
a legal matter, either preclude or reduce recovery by another"), *holding modified
on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546
(2005).  Nor has UIC identified any analogous case in which closely related but
legally distinct claims were subject to aggregation because they were brought by
related entities that shared ownership.  *Cf. United States v. Bennett*, 621 F.3d 1131,

1136 (9th Cir. 2010) (noting well-established principle that that corporations are distinct entities from their owners).

In sum, UIC has not shown that any obligation it has to Plaintiffs is owed "to the group of plaintiffs as a group and not to [Plaintiffs] severally," making aggregation inappropriate. *Gibson*, 261 F.3d at 944. "[S]imply because claims may have questions of fact and law common to the group does not mean [the plaintiffs] have a common and undivided interest." *Urbino*, 726 F.3d at 1122 (cleaned up). At most, UIC has shown uncertainty in the law through the absence of any closely analogous case addressing the propriety of aggregation in these circumstances. Given the rule that any doubts about the propriety of removal must be resolved in favor of remand, that is not enough. The Court cannot find that removal was proper based on diversity jurisdiction on this record.

B.

UIC also argues that removal is proper because Plaintiffs' quantum meruit claim premised on the Knox–Keene Act is completely preempted by ERISA, giving rise to federal-question jurisdiction. ERISA has two separate provisions that implicate preemption: ERISA § 502(a), codified at 29 U.S.C. § 1132(a), and ERSIA § 514(a), codified at 29 U.S.C. § 1144(a). The latter, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to" specified ERISA plans, 29 U.S.C. § 1144(a), provides a defense of conflict preemption that does not give rise to federal-question jurisdiction. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009) ("Defendants are free to assert in state court a defense of conflict preemption under § 514(a), but they cannot rely on that defense to establish federal question jurisdiction."). Thus, although UIC raises conflict preemption under ERISA § 514(a) in its motion to dismiss, that provision has no bearing on Plaintiffs' remand motion.[2]

_____

[2] At the motion hearing, UIC argued that the Ninth Circuit's recent decision in *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, No. 23-55019, 2024 WL 2789835 (9th Cir. May 31, 2024), establishes that Plaintiffs' claims are completely preempted. *Bristol SL* involved only conflict preemption under ERISA § 514(a) and did not address complete preemption under ERISA § 502(a). Thus, *Bristol SL* does not control the Court's jurisdictional analysis, and UIC's oral request for leave to file supplemental briefing on it is denied. UIC remains free to argue in state court that under *Bristol SL*, Plaintiffs' claims fail on the merits based on conflict preemption.

In contrast, ERISA § 502(a) creates a private cause of action for ERISA plan participants and beneficiaries that has been construed to be "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). Thus, "[i]f state-law causes of action come within the scope of § 502(a)(1)(B), those causes of action are completely preempted, and the only possible cause of action is under § 502(a)(1)(B)," such that federal district courts have federal-question jurisdiction over the asserted state-law claims.  *Marin*, 581 F.3d at 946.

In *Davila*, an ERISA plan participant and a plan beneficiary sued their respective plan administrators for their decisions not to provide coverage for certain treatments.  Although the plaintiffs alleged tort claims under Texas law, the Supreme Court held that the claims were completely preempted by ERISA § 502(a).  The Court applied a two-prong test for determining whether a state-law claim comes within the scope of § 502(a):  the claim is completely preempted if (1) "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions."  *Davila*, 542 U.S. 200, 210 (2004).  "The two-prong test of *Davila* is in the conjunctive," so state-law claims are preempted only where both prongs are satisfied.  *Marin*, 581 F.3d at 947.

The parties here dispute both *Davila* prongs, but the Court need not address the first because it finds the second dispositive.  Plaintiffs' claims unambiguously assert an entitlement to recovery that is based on an independent legal duty—namely, the obligation imposed by California's Knox–Keene Act on "health care service plans" (HCSPs) to reimburse medical providers for the reasonable costs of emergency medical services.  *See Cnty. of Santa Clara v. Superior Ct.*, 14 Cal. 5th 1034, 1044 (2023) ("[T]he Knox–Keene Act's statutory and regulatory scheme contemplates that private actions under a quantum meruit theory may be used to recoup appropriate reimbursement for services rendered.").

UIC argues that Plaintiffs' claim is nevertheless preempted because they obtained an assignment of the patient's ERISA rights and are artfully pleading their complaint to avoid relying on those rights.  UIC's premise is correct: Plaintiffs have previously asserted that the patient assigned his rights to them, and their complaint—which they filed in state court after voluntarily dismissing a prior removed complaint that also alleged an ERISA claim by the patient—is plainly

crafted to avoid federal jurisdiction.  *See* Dkt. No. 1-1 ¶ 9 ("All of the claims asserted in this complaint are based upon the individual and proper rights of Medical Providers in their own individual capacity and are not derivative of the contractual or other rights of the Medical Providers' Patient.  Medical Provider does not in any way seek to enforce the contractual rights of the Medical Providers' Patient, through the Patient's insurance contract, policies, certificates of coverage or other written insurance agreements.").  But UIC's conclusion does not follow from that premise.  Notwithstanding the wastefulness of Plaintiffs' litigation strategy—which has now resulted in the filing of four complaints between the two cases—it is Plaintiffs' prerogative to choose which claims to pursue.  The fact that Plaintiffs could have also asserted the assigned ERISA rights does not mean that they were required to do so in addition to asserting a separate right to payment under the Knox–Keene Act.  *See Marin*, 581 F.3d at 949 (rejecting argument that "because the Hospital was assigned the patient's rights to payment under his ERISA plan, it was prevented from seeking additional payment under state law"); *accord Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ("In view of the fact that, although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the Providers, the Providers are asserting state law claims arising out of separate agreements for the provision of goods and services, we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan.");[3] *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009) ("[S]o long as the provider's state law claim does not fall within § 502(a), the existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment.").

On its face, Plaintiffs' complaint invokes a right to recovery based on an independent legal duty under the Knox–Keene Act.  UIC relies on *Cleghorn v. Blue Shield of California*, in which the Ninth Circuit found complete preemption of a Knox–Keene claim asserted by a plan participant.  408 F.3d 1222, 1227 (9th Cir. 2005) ("Whether or not section 1371.4(c) of the California Health and Safety Code may be applicable to ERISA plans, it may not be enforced against an ERISA plan by way of this lawsuit asserting state-law causes of action against Blue Shield because of its denial of ERISA plan benefits.").  But a *participant's* claims against an ERISA plan for nonpayment of benefits are precisely what the Supreme Court

---

[3] "Though decided earlier, *Blue Cross* is consistent with the Supreme Court's decision in *Davila*."  *Marin*, 581 F.3d at 948.

in *Davila* found preempted by ERISA § 502(a), which provides the exclusive remedy for participants to recover such benefits. *Cleghorn* did not hold that ERISA § 502(a) preempts claims under the Knox–Keene Act brought by medical providers, to whom ERISA does not provide a direct cause of action.

UIC also argues that the Knox–Keene Act provides no independent duty because UIC is not an HCSP within the meaning of the act. To be sure, UIC raises serious arguments that it is not subject to the Knox–Keene Act, and multiple courts have found as much when addressing the merits of similar claims. *See Ata Mazaheri, M.D., Inc. v. UnitedHealthcare Ins. Co. Inc.*, No. CV 23-0865-MWF, 2023 WL 5167362, at \*5 (C.D. Cal. July 10, 2023) (finding that UIC is an insurer, not an HCSP); *Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. CV 18-01283-RSWL, 2018 WL 6507890, at \*3 (C.D. Cal. Dec. 7, 2018) (same). But if UIC is able to establish in this case that it is not an HCSP subject to the Knox–Keene Act, the upshot would be that Plaintiffs have alleged a meritless state-law claim, not that they have alleged a federal claim. Determining the merits of Plaintiffs' entitlement to recover under the Knox–Keene Act is not appropriate unless the Court first determines that it has jurisdiction. *See, e.g.*, *California ex rel. Herrera v. Blue Cross of California, Inc.*, No. 11-CV-3107, 2011 WL 4723758, at \*5 (N.D. Cal. Oct. 7, 2011) (granting motion to remand where "plaintiff's claims depend on an interpretation of state law, including the Knox–Keene Act, and do not in any way involve the interpretation of any ERISA plans administered by defendants"); *Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*, No. 5:14-CV-03903, 2015 WL 138197, at \*3 (N.D. Cal. Jan. 9, 2015) (same).

UIC identifies two district court decisions that have denied remand after deciding that the Knox–Keene Act did not give rise to an independent duty because the defendant was not an HCSP. *Sagebrush LLC v. Cigna Health & Life Ins. Co.*, No. 24-CV-00353-CJC, 2024 WL 2152458, at \*3 (C.D. Cal. May 13, 2024); *Sanjiv Goel, M.D., Inc. v. United Healthcare Servs., Inc.*, No. 2:23-CV-10071-HDV, 2024 WL 1361800, at \*5 (C.D. Cal. Mar. 29, 2024). These cases are at odds with what appears to be the majority approach in cases like *Herrera* and *Community Hospital*, which find remand appropriate under these circumstances. At most, they suggest uncertainty, which must be resolved in favor of remand. *Gaus*, 980 F.2d at 566. In any event, the Court is unpersuaded that Plaintiffs' likely inability to recover under the Knox–Keene Act based on the merits of their claim has any bearing on the question of complete preemption. *See Alta Los Angeles Hosps., Inc. v. Blue Cross of California*, No. 2:17-CV-03611-ODW, 2017 WL 3671156, at \*3 (C.D. Cal. Aug. 24, 2017) ("[T]he viability (or lack thereof) of Plaintiff's non-

ERISA legal theories [including a claim under the Knox–Keene Act] does not change the fact that those theories, as pleaded, do not implicate any duty under ERISA and thus do not give rise to jurisdiction under complete preemption. If Plaintiff wants to avoid complete preemption by asserting nonsensical state law theories, that is its prerogative.").

In sum, UIC has not shown that Plaintiffs' claim is completely preempted by ERISA § 502(a), and the Court therefore lacks federal-question jurisdiction.[4]

IV.

UIC has not met its heavy burden to show that this Court has subject-matter jurisdiction. Accordingly, Plaintiffs' motion to remand is granted, and this case is remanded to the Los Angeles County Superior Court.

Date: June 7, 2024

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[4] The Court's conclusion that UIC has not established complete preemption under ERISA § 502(a) should not be construed as expressing any opinion on whether UIC has a viable conflict preemption defense under ERISA § 514(a). Lacking jurisdiction, the Court does not reach the issues in UIC's motion to dismiss.